**Norman T. KIDDER**

v.

**COASTAL CONSTRUCTION COMPANY, INC., and Walsh Construction Company, et al.**

Supreme Judicial Court of Maine.

Aug. 29, 1973.

Farris & Foley by Phillip M. Kilmister, Augusta, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Robert F. Hanson, Richardson, Hildreth, Tyler & Troubh by Robert L. Hazard, Portland, for defendants.

Before DuFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Consolidated before us are two appeals taken, respectively, by each of two employers, Coastal Construction Company, Inc., (hereinafter Coastal) and Walsh Construction Company (hereinafter Walsh), from a pro forma decree of the Superior Court (Kennebec County) approving an Industrial Accident Commission award of compensation to the complainant, Norman T. Kidder.

On July 12, 1968 Kidder, while employed as a field superintendent by Coastal, fell approximately 8 to 10 feet from a cement wall and sustained an injury to his back. On March 14, 1970 he filed a petition against Coastal and its insurance carrier, The Travelers Insurance Company, for an award of compensation—asserting that he had sustained a personal injury by accident in the course, and arising out, of his employment which had caused him an incapacity to work producing a loss of wages for 18 weeks.

On September 17, 1970, while Kidder was employed by Walsh, he was engaged in moving a twenty foot wooden ladder to construct a staging to assist in the turning of some steel rods when the top of the ladder caught on some of the rods. As Kidder was attempting to disengage the ladder, he felt a severe pain in his back which caused him to fall to his knees.

As to this second incident, Kidder filed, on the eighth day of December, 1970, a petition for an award of compensation against Walsh and its insurance carrier, Employers Mutual Liability Insurance Company. He alleged that he had received a personal injury by accident in the course, and arising out, of his employment resulting in a subsequent total incapacity to perform any labor. The petition further stated that:

"This injury may be an aggravation of a previous back injury sustained in an accident while in the employ of Seacoast [sic] Construction Company, which took place on July 12, 1968."

No hearing was had by the Industrial Accident Commission on either petition until May 4, 1971 when both of the petitions were consolidated for hearing, and hearings were had on May 4, 1971 and September 21, 1971.

On April 11, 1972 the Industrial Accident Commissioner filed his decree and order. Subsequently, on May 3, 1972, the Commissioner's action was approved by the pro forma Superior Court decree from

which the present appeals by Coastal and Walsh are taken.[1]

At the hearings, Kidder gave the following testimony concerning his physical condition and work history subsequent to his fall on July 12, 1968. Immediately after the fall, he experienced pain in his lower back which continued and induced him a week later to consult a physician. During the first week after the fall, Kidder stayed out of work because of pain. He then returned to work and continued at his job, apparently without further discomfort, until October 16, 1968. On that date, he was dragging some metal sheets of decking when he felt flashes of pain in his lower back. He again went to a doctor who advised him to cease lifting activity. Thus advised, Kidder thereupon ceased working. He resumed work a few weeks later but confined himself to light supervisory activity and operating a truck. By the end of November, 1968, the pain in his back had become so bothersome that Kidder was again obliged to quit work with Coastal (although in January of 1969 he went to New Jersey to help his brother build a golf course and performed work which caused him minimal back symptoms). Finally, on May 5, 1969, Kidder returned to work for Coastal and by July of 1969 he was performing heavy construction work. He experienced no significant pain in his back throughout his subsequent period of employment with Coastal which terminated in November of 1969 when Kidder left Coastal to go to work for Walsh. While Kidder was working for Walsh, he was free of back pain until the incident of September 17, 1970.

After Kidder had sustained the injury of September 17, 1970, while in the employ of Walsh, a neurosurgeon, Dr. Julius E. Ciembroniewicz, was requested to examine and treat Kidder. He testified that he had made a diagnosis that Kidder had suffered a ruptured disc, and he had arranged to have it surgically removed on October 12, 1970.

In his decree the Commissioner summarized the full purport of Dr. Ciembroniewicz' expert opinion, as given in evidence, to be

"that the initial onset of the disc injury was caused by the fall in July, 1968; and the final rupture was caused by the lifting incident on September 17, 1970";

and further,

"petitioner had a light moderate work capacity",

petitioner having been

"advised to avoid lifting, bending, pulling or pushing."

The Commissioner found that:

"Norman Kidder received a personal injury by accident arising out of and in the course of his employment on July 12, 1968; he also received a compensable injury on September 17, 1970 while working for Walsh Construction Company."

In addition, the Commissioner concluded that:

"Norman Kidder was totally disabled from September 17, 1970 to May 1, 1971 inclusive with a maximum compensation rate of $72.92 per week; . . . Mr. Kidder has been 70% incapacitated as of May 2, 1971 with a partial compensation rate of $72.92 per week based on the employee's 'average weekly wages' of $238.-80 prior to the September 17, 1970 accident."

1. Since the accident involving Walsh occurred in Knox County, a motion to transfer the venue of the Walsh proceeding, for purposes of an appeal to the Law Court, from Knox County to Kennebec County was filed to allow that matter to be consolidated with the petition for award against Coastal already pending in Kennebec County. The motion for transfer of venue was granted by the Superior Court Justice presiding in Kennebec County, and he then ordered the two cases consolidated for purposes of his pro forma decree as the basis for subsequent appellate proceedings.

Finally, the Commissioner determined that:

"Mr. Kidder's subsequent activity on September 17, 1970 was not an independent intervening cause; . . . the primary injury of July 12, 1968 contributed to Mr. Kidder's disc operation and disability; . . . the September 10, 1970 accident contributed to the final rupture of the disc and to Mr. Kidder's disability. . . . Coastal Construction Co. and Walsh Construction Co., are both equally responsible for Mr. Kidder's disability."

On the basis of all the foregoing, the Commissioner:

"Ordered, Adjudged and Decreed that Coastal Construction Co., or its insurer, and Walsh Construction Co., or its insurer, pay to Norman Kidder compensation for total incapacity at the rate of $72.92 per week from September 17, 1970 to May 1, 1971, inclusive; and partial compensation at the rate of $72.92 per week from May 2, 1971 up to the date of this decree [April 11, 1972] and to continue thereafter at said rate in accordance with the provisions of the Act."

In light of the issues submitted to the Commissioner by the first of Kidder's two petitions (the petition against Coastal), there is a striking omission in the Commissioner's decree. By this petition Kidder was claiming that the Coastal injury had produced an incapacity for work which caused him an actual 18 weeks work loss. At hearing, Kidder had presented credible testimony which, if believed by the Commissioner, supported Kidder's claim of actual incapacity to work and work loss.

Yet, the Commissioner failed to rule on the issue of whether the personal injury sustained by Kidder on July 12, 1968 while he was in the employ of Coastal (and which the Commissioner concluded had been sustained by accident, in the course, and arising out, of said employment) had caused, prior to the second (Walsh) injury, an independent incapacity for work producing an actual wage loss and entitling Kidder to compensation payments by Coastal. So far as we can ascertain from the record, the failure of the Commissioner to make this determination is inexplicable and appears to be an oversight.[2]

As more fully explained hereinafter, this omission by the Commissioner must be held a critical deficiency which precludes a decision by this Court of the legal issues as they are postured by Coastal and Walsh in the present appeals.

We stress, at the outset of discussion, the proper function of this Court in an "appeal" situation: this Court is to decide only questions of law. For this reason, in the present instance this Court is without authority to supply the missing finding above described and which it deems of critical consequence. On the evidence of record the answer to the question whether there had been an actual incapacity to work and consequent wage loss antedating the Walsh injury and attributable to the Coastal injury is heavily, if not entirely, dependent upon the credence to be given to the testimony of Kidder; and his testimony deals, in the main, with subjective factors. The question is thus genuinely one of fact. It can be resolved solely by the Commissioner as the appropriate fact-finder.

2. There is nothing in the record to suggest that any agreement for payment of compensation had been entered into between Kidder and Coastal—as a possible explanation of the Commissioner's passing over the question of whether the first injury had independently produced an actual incapacity to work and wage loss which was in existence prior to the second injury.

Moreover, were there in fact such an agreement for compensation, it appears to us in-

comprehensible that Coastal could raise the legal contention argued in its brief (as more fully discussed hereinafter) and which is predicated entirely on the factual basis that the first injury to Kidder had produced *no* independent incapacity for work (actual or presumed) entitling Kidder to payment of compensation benefits by Coastal.

Although the vital issue of actual disability and wage loss resulting from the first injury, and as antecedent to the second injury, thus remains undetermined in the present record, Coastal has, nevertheless, undertaken to adopt a legal position in this appeal which rests, precisely and entirely, on this unsettled issue of fact. Throughout its brief Coastal makes statements such as the following:

"The employee was not disabled in the wage loss sense prior to his unfortunate accident on September 17, 1970."

"He did not seek [notwithstanding that the record definitively shows that he filed a petition for award of compensation against Coastal on March 14, 1970, claiming 18 weeks loss of work] nor receive compensation for partial disability from January 1, 1969 until the date of the accident  .   .   ., [on] September 17, 1970."

"Prior to the accident of September 17, 1970 the employee in this case was not disabled."

3. In support of this position Coastal emphasizes that those cases which have applied a principle of apportionment by judicial action presuppose that they are dealing with "successive disabilities" in the sense that the first injury must have had a unique relationship to the basic principle of Workmen's Compensation. As stated by Larson, the principle is: "It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability, is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury." 2 Larson, Workmen's Compensation Law § 57.10, p. 2.

Utilizing this fundamental principle, Coastal produces further statements from Larson, specifically concerned with the apportionment problem, as follows: "Apart from special statute, apportionable 'disability' does not include a prior nondisabling defect or disease that contributes to the end result.   .   .   . Apportionment does not apply  .   .   . in any case in which the prior condition was not a disability in the compensation sense." (Ibid. § 59.20, pp. 88.109, 88.110)

By thus relying on particular facts as controlling for purposes of its appeal (even though on the present state of the record the facts had not been definitively settled as Coastal has assumed), Coastal takes the legal position that the decision of the Commissioner invoking an apportionment doctrine must be reversed. Coastal's position is that, relative to two separate personal injuries, each of which is sustained by an employee while in the employ of a different employer,—and notwithstanding that each is caused by an accident in the course, and arising out, of the respective employments, and each contributes causally to the ultimate work incapacity and wage loss—it is erroneous (in the absence of a statute explicitly so directing) for a Court to apportion between the two employers legal responsibility to pay compensation benefits for incapacity to work and wage loss arising after the second injury, *if the first personal injury had not itself produced an independent incapacity for work and wage loss, existing prior to the second injury, entitling the employee to payment of independent compensation benefits by the first employer* [3].

Further, "(t)o be apportionable,  .   .   ., an impairment must have been independently producing some degree of disability before the [second] accident, and must be continuing to operate as a source of disability after the [second] accident." (Ibid. § 59.20, p. 88.118)

On this line of reasoning, Coastal's position is that a personal injury which has been caused by accident in the course, and arising out, of an employment but which has failed to produce an incapacity for work (actual or presumed) is, in the workmen's compensation sense, indistinguishable from any other prior existing defect or disease. It should be held to fall, therefore, within the general principle established in Maine by Gagnon's Case, 144 Me. 131, 65 A.2d 6 (1949) that the employer for whom the employee was employed when he sustained a personal injury by accident in the course, and arising out, of his employment which results in an incapacity for work causing a wage loss will be solely responsible "irrespective of whether the incapacity may have been due in part to the prior condition." (p. 134, 65 A.2d p. 8)

It thus becomes clear that the failure of the Commissioner to make the factual determinations upon which Coastal has predicated its legal argument effectively deprives Coastal's present legal position of a relationship to actuality; without the appropriate finding by the Commissioner, Coastal's present contention must be regarded as merely an interesting academic exercise.

Furthermore, since Coastal has restricted its present argument on appeal to the factual underpinning that, prior to the Walsh injury, no independent incapacity to work and consequent wage loss attributable to the Coastal injury had existed, this Court would be engaging in speculation were it to undertake to project whether, in the event the Commissioner were to find the facts *contrary* to such present assumption by Coastal, Coastal would then assert an appellate position contesting the Commissioner's invoking of the principle of apportionment.

In its present aspect the Walsh appeal generates a parallel predicament.

Walsh's present legal contention—that the Commissioner acted correctly in holding the principle of apportionment applicable but erroneously in deciding that Coastal and Walsh should share responsibility equally—is founded entirely upon a view of the facts which presupposes that Kidder's first (Coastal) employment-related personal injury had in fact produced an actual incapacity to work resulting in an actual wage loss, all of which existed prior to the second (Walsh) injury. To such effect are various statements in Walsh's brief as follows:

"The employee lost time from work during July 1968, October 1968, November 1968 and did not return to steady employment until May 5, 1969. Each period of disability is either directly related to employment with Coastal or, as in the case of snow shoveling, arguably the natural result of that primary injury."

"As this case actually developed . . . Coastal's obligation to pay Mr. Kidder compensation benefits was fortuitously affected by a subsequent occurrence."

"It is the contention of Walsh that this Court should announce a rule applicable to cases of successive injuries, [sustained by an employee] while employed by successor employers, which takes into account whether the disabilities resulting from a primary injury have ceased."

Not only does Walsh premise its present legal contentions on the above-mentioned assumptions of fact but also it cites, as supporting authorities, cases which utilize apportionment only in a context in which the first injury (sustained by accident in the course, and arising out, of the first employment) had produced, as a condition existing prior to the second injury, an independent incapacity for work (actual or presumed) entitling the employee to compensation payments for which the first employer was solely responsible.

It could eventuate that the Commissioner, as called upon by this Court to make a determination of the actual issue, would see fit to deny the factual assumptions of Walsh. The Commissioner may conclude (as the evidence could permit because of the credibility aspects involved) that the first (Coastal) injury had *failed* to produce an independent incapacity for work (actual or presumed) anteceding the second (Walsh) injury. Manifestly, this Court cannot now speculate whether the Commissioner will, or will not, so find. Neither can this Court now purport to predict whether (1) were the Commissioner to decide that there was *lacking* an independent incapacity for work (actual or presumed) attributable to the Coastal injury, the Commissioner would persist in applying a legal principle of apportionment in such circumstances or would deny its applicability or (2) were the Commissioner thus to reject the applicability of a principle of apportionment, Walsh would deem it appropriate

to assert an appellate legal position contesting such ruling.

Accordingly, these consolidated cases must be remanded for further proceedings in accordance with the guidelines provided by this opinion. Such disposition is necessary, first, in fundamental fairness to the appealing employers—that each may be allowed to develop its own legal positions to the fullest possible extent without being trapped, unwittingly, into a confined reliance upon hypothetical, rather than real, factual foundations and that both may be brought into meaningful contest upon common ground instead of futilely avoiding each other because each has sought to operate from a separate field of combat (on which neither has the right to be). Remand is required, second, to enable this Court to render a decision which will be actually dispositive of such genuine controversy as may emerge once the employers are precluded from indulging in hypotheses and are obligated to deal with facts as finally settled by the Commissioner.

Upon remand, there should be, specifically and at minimum, a definitive determination by the Commissioner of the question raised by the first petition for award of compensation brought by Kidder against Coastal (and its insurance carrier, The Travelers Insurance Company)—whether the personal injury sustained by Kidder on July 12, 1968 had caused Kidder to suffer an independent incapacity to work and actual wage loss for which, as existing prior to the Walsh injury of September 17, 1970, Coastal had sole independent legal obligation to pay Kidder compensation benefits. After he has made such decision, the Commissioner is, of course, at liberty to modify, as he may see fit in light of his further determinations, the decree and order which he had previously rendered.

The entry is:

The pro forma decree of the Superior Court is vacated.

The cases (as consolidated) are remanded to the Industrial Accident Commission for further proceedings in accordance with this opinion.

Further ordered that an allowance of $350.00 as a total amount to cover fees and expenses of counsel for the (consolidated) appeals, plus the cost of the record, be paid, one-half by the Appellant, Coastal Construction Company, and one-half by the Appellant, Walsh Construction Company, to the Appellee, Norman T. Kidder.

WEBBER, J., sat at argument but retired before the decision was rendered.