**DUNKIN DONUTS OF AMERICA, INC. and/or Liberty Mutual Insurance Company**

v.

**Thomas WATSON et al.**

Supreme Judicial Court of Maine.

Dec. 9, 1976.

Rudman, Rudman & Carter by John M. Wallach, Gene Carter, Bangor, for plaintiffs.

Paine, Lynch & Weatherbee by Peter M. Weatherbee, Bangor, for Thomas Watson.

Winchell & Buckley by David J. Leen, Albert H. Winchell, Jr., Bangor, for Little Enterprises and others.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

On June 14, 1972 Thomas Watson (Watson), while employed as a baker for Dunkin Donuts of America, Inc. (Dunkin), slipped and fell while lifting a pail of dough which weighed between seventy-five and eighty pounds. He sustained a compensable injury to his back which necessitated two surgical procedures. Pursuant to an approved agreement with Dunkin, Watson received compensation for total incapacity from June 15, 1972. On July 14, 1973 Watson returned to work, having secured a part-time job with Little Enterprises, d/b/a/ Mr. Donut (Mr. Donut). A new agreement with Dunkin was approved on December 31, 1973 whereby Watson received partial compensation from July 14, 1973 at a varying rate depending upon the amount he was able to earn each week.

On November 13, 1973, in the course of his now full-time work for Mr. Donut, Watson was lifting a screen of donuts over his head when he experienced a severe pain in his back. A third back operation was performed on December 13, 1973. In June, 1974 Watson returned to work for Mr. Donut. He worked there for a few hours per day until he was discharged on July 22, 1974, to be replaced by a full-time employee who could perform all of the duties of a baker.

On January 14, 1974, Dunkin and its insurance carrier, Liberty Mutual (Liberty), filed a petition for review of incapacity. Watson subsequently filed a petition for Award of Compensation on January 30,

1974, alleging that he had received a personal injury by accident on November 13, 1973 while employed by Mr. Donut. He stated in his petition that: "[t]his injury may be an aggravation of a previous back injury sustained in an accident while employed by Dunkin Donuts of America which took place on June 14, 1972." Because of the nature of the ailment, the two pending petitions were consolidated.

The Commissioner's decrees were rendered in January, 1975. They included a finding that at the time of the compensable second accident of November 13, 1973, Watson was already partially disabled as a result of his prior accident of June 14, 1972. Finding further that Watson was totally incapacitated from November 13, 1973 to May 6, 1974, and 80% incapacitated from May 7, 1974, the Commissioner ordered that Dunkin or its insurer and Mr. Donut or its insurer each pay one-half of the employee's compensation benefits. Both employers and Watson have appealed from a pro forma decree of the Superior Court for Penobscot County sustaining the Commissioner's decision.[1] We sustain the appeals and remand to the Commissioner for further proceedings.

This Court has recently had occasion to resolve the difficult problem of who is to assume liability when there are two successive and temporarily disabling injuries, arising out of two different employments, which combine to produce a single indivisible disabling injury. *See Kidder v. Coastal Construction, Inc.,* Me., 309 A.2d 119 (1973) (*"Kidder I"*); *Kidder v. Coastal Construction Co., Inc.,* Me., 342 A.2d 729 (1975) (*"Kidder II"*). Because of their controlling importance to the case at bar, a brief review of the facts of *Kidder I and II* would be appropriate.

In July of 1968 Norman Kidder fell and sustained an injury to his back while carrying out his duties as a field superintendent for the Coastal Construction Company (Coastal). In March of 1970 he filed a petition for an award of compensation against Coastal and its insurance carrier. Six months later, while in the employ of Walsh Construction Company (Walsh), Kidder was attempting to disengage a ladder which was caught on some steel rods when he felt a severe pain in his back. Soon thereafter, he filed a petition for award of compensation against Walsh in which he noted (in language identical to that of Watson in his petition against Mr. Donut in our present case) that the second injury "may be an aggravation of a previous back injury." The Commissioner determined that the two employers were equally responsible for Kidder's disability. We found it imperative to remand the case, however, since the Commissioner had omitted to make a critical finding as to whether the first injury sustained in 1968 had caused an independent incapacity for work producing an actual wage loss and entitling Kidder to any compensation payments whatsoever from Coastal. This finding is essential since apportionment does not apply unless the prior condition was a disability in the compensation sense.[2] *Kidder II,* supra at 731 n. 2; *Kidder I,* supra at 123 n. 3; *See generally* 2A Larson Workmen's Compensation Law § 59.20 (1976).

On remand the Commissioner found specifically that the injury suffered while employed by Coastal did, in fact, produce an actual wage loss, and that the two compensable injuries had combined to produce a single indivisible disabling injury. Both Coastal and Walsh appealed from the Commissioner's apportionment of liability

---

1. By agreement pursuant to Me.R.Civ.P. 73 (e), Dunkin and its insurance carrier, Liberty, were stipulated to be the appellants for purposes of applying Me.R.Civ.P. 73 through 76(a).

2. In this case, such a definitive finding is unnecessary since, in fact, Watson had been receiving compensation payments from his first employer, Dunkin, under approved agreements for about one and one-half years after his initial accident.

equally between them. In *Kidder II*, we denied the appeals and affirmed the order of the Commissioner.

█ Noting that *Kidder II* was a case of first impression in Maine, we reviewed the various alternative approaches to resolution of the problem of responsibility for successive disabilities. We chose to follow the rule of equal apportionment, thereby adding Maine to the growing list of states that, either by judicial decision or statute, have chosen to temper the harshness of the Massachusetts-Michigan rule which would place full liability on the carrier covering the most recent accident. *See generally* 4 Larson, supra § 95.31. We observed that where more than one employer is responsible for a disability, apportionment according to responsibility is "not only logical and equitable, but consistent with the general purpose of our compensation Act," and we concluded:

> "In any case in which the causative contribution to the single indivisible injury by each respective employer may be ascertained, liability should be fixed in proportion to such contribution. Where . . . such apportionment is impossible, liability for compensation payments may properly be divided equally." *Kidder II,* supra at 734.

Equal apportionment is proper, then, only when an exact determination of the extent of each employer's contribution to the resultant medical disability would amount to "mere conjecture."

█ Applying the law as laid down in *Kidder II* to the facts of the instant case, we observe that certain critical findings are missing from the Commissioner's decision.[3] *Kidder II* impliedly mandates, first, that a finding be made that the two

compensable injuries occurring in the course of and arising out of two successive employments combined to produce a single disabling injury. We believe that this requirement was satisfied by the Commissioner when he stated: "The Commission further finds that Mr. Watson was partially disabled on November 13, 1973 as a result of his accident on June 14, 1972 . . . ."

█ *Kidder II* next dictates that the Commissioner, as the appropriate factfinder, determine whether or not the causative contribution of each employer can be ascertained and, if so, the proportion of responsibility attributable to each employer. It is for this definitive determination that we remand these consolidated cases. Should the expert medical evidence adduced at the remand hearing not furnish a solid basis for allocating the proportionate responsibility, thus necessitating resort to conjecture and speculation, then and only then would the Commissioner be justified, under *Kidder II* principles, in entering a decree of equal apportionment.

██ The second issue raised in this appeal involves Watson's contention that the Commissioner was incorrect when he entered a finding of 80% rather than 100% incapacity as of May 7, 1974. The Commissioner determined that Watson "does have capacity to do very light work as of May 7, 1974 avoiding heavy lifting, bending or pulling." The nature and extent of a disability is a question of fact upon which the finding of the Commissioner is final if there is any competent evidence to support it. *Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375 (1972); *White v. Monmouth Canning Co.,* Me., 228 A.2d 795 (1967). We believe that the medical testimony offered at the hearing

---

3. We note that *Kidder II* had not yet been decided on January 7 and 8, 1975, the dates of the Commissioner's orders. Although we are compelled to remand for findings in light of *Kidder II*, our action should not be construed as a reflection on the well-reasoned decision of the Commissioner who, in view of the absence of any Maine case law precedent or statutory authority on the issue, logically fashioned his determinations along policy lines.

by the physician who examined Watson on May 6, 1974 unequivocally provides ample evidentiary support for the Commissioner's finding of light work capacity.

██ Dunkin, as the moving party in its Petition for Review of Incapacity, thus satisfied its initial burden of showing some improved capacity. When some physical ability to perform work has been demonstrated, the burden of going forward shifts to· the employee who will not be entitled to compensation for total incapacity unless there is some evidence that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition and that he failed, either because employers would not hire people of his limited capacity to do the work within his tolerance or because there was no market in his community for the restricted work of which he was capable. *Bowen v. Maplewood Packing Co.*, Me., 366 A.2d 1116 (1976). In reference to Watson's work search, the Commissioner stated: "Mr. Watson was never afforded the opportunity to use reasonable efforts to obtain the kind of work which he can perform. He worked for Mr. Donut from June, 1974 to July 22, 1974 being replaced by an employee able to perform all the duties of a baker." It is clear that the Commissioner believed that no reasonable effort had been demonstrated as of the last·hearing date which, coincidentally, was July 22, 1974. Indeed, inasmuch as Watson had been discharged on that very day, he had no time in which to make the requisite good faith effort and,

of course, could not at that point have hoped to satisfy the burden which devolves upon any partially disabled claimant who is seeking total compensation. [4] Watson argues, in effect, that because he was afforded no chance to commence a work search, the burden of showing a reasonable good faith effort has dissipated, and he is automatically entitled to receive total compensation. The hole in this argument is apparent; with his contention, we cannot agree.

██ In light of the evidence before him, the Commissioner had no alternative but to award partial compensation as of July 22, 1974. Nevertheless, we believe that upon remand of this case, Watson should be given an opportunity to submit evidence of his work search efforts subsequent to his July 22 discharge from Mr. Donut. Should he sufficiently demonstrate both a good faith effort to obtain employment commensurate with his physical limitations and a failure in the task by reason of his injury or because no such work was available in his community, the Commissioner might then justifiably conclude that Watson is entitled to retroactive payments for total incapacity from July 22.

██ We do not believe, however, that total disability benefits would be warranted under any circumstances from June, 1974 to July 22, 1974 since Watson was actually employed in part-time remunerative work for Mr. Donut during that period. This record fails to disclose his work search effort, if any, between May 7, 1974

---

4. We note an error of law made by the Commissioner when he required in each decree that "Watson must satisfy this Commission that he used reasonable efforts to obtain the kind of work which he can perform commensurate with his physical limitations and that he had failed by reason of his injury or because there was no such work available in the area in which he resides." In the Petition for Review of Incapacity, the ultimate burden was merely one of going forward with some evidence of his good faith work search. In the Petition for Award of Compensation, on the other· hand, it is the employee, Watson, who carries the ultimate burden of proof to show his entitlement to total compensation by proving his good faith work search by a fair preponderance of the evidence. *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162 (1975). However, due to the coincidence of the termination of his employment and the date of ,the last hearing, Watson was afforded no opportunity to satisfy either the burden of going forward in the Dunkin petition or the burden of proof in his own᾽ petition against Mr. Donut.

and his commencement of work at Mr. Donut in June, 1974. If Watson is seeking total compensation benefits for those weeks, he must satisfy the *Bowen* good faith effort burden which rests with him.

The entry is:

The pro forma decree of the Superior Court is vacated.

The cases (as consolidated) are remanded to the Industrial Accident Commission for further proceedings in accordance with this opinion.

It is further ordered that an allowance of $550.00 for his counsel fees, plus the actual reasonable out-of-pocket expenses for the (consolidated) appeals be paid, one-half by the Appellant, Dunkin Donuts of America, Inc., and one-half by the Appellee, Little Enterprises, d/b/a/ Mr. Donut to the Appellee, Thomas Watson.

WEATHERBEE, J., did not sit.

All Justices concurring.