**Elton B. GULLIFER**

v.

**GRANITE PAVING COMPANY and Maine Bonding and Casualty Co.**

Supreme Judicial Court of Maine.

March 10, 1978.

McTeague, Higbee & Tierney by Patrick N. McTeague (orally), Brunswick, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert E. Noonan (orally), Ronald D. Russell, Portland, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

The employer appeals from a pro forma Superior Court decree affirming an order, dated May 27, 1976, of the Industrial Accident Commission. That order awarded Elton B. Gullifer, the employee-appellee, compensation payments from December 22, 1974, "until further order."

The following facts are undisputed: On March 19, 1971, while working as controller for appellant Granite Paving Company, appellee slipped and fell, injuring a disc in his back. Unable to work for some time, he entered into a voluntary compensation agreement with his employer, as authorized by 39 M.R.S.A. § 94, by which he received payments for 5⅘ weeks for total incapacity. Pursuant to 39 M.R.S.A. § 54,[1] the amount paid him during that time was equal to two-thirds of his average gross weekly wage or $72.92 per week. At the end of 5⅘ weeks appellee returned to his former job with Granite and, although experiencing some discomfort, continued to work full time for over two years until August, 1973. He then worked part time until October, 1973, when at age fifty-six he discontinued work.

On December 22, 1974, as the result of a sneeze, appellee began to experience increased back pain. His physician testified that the symptoms were caused by a hernia of the nucleus pulposus at the level of L–5 S1. He indicated that appellee's condition was the result of aggravation of the 1971 injury.

On June 13, 1975, Mr. Gullifer brought a "Petition for Further Compensation" against Granite claiming further compensation for total incapacity alleged to result from the 1971 injury to his back. The Commissioner found, "as a matter of law," that from December 22, 1974, the date of the sneeze, "until further order," appellee was entitled to receive $72.92 per week. The Commissioner regarded "the issue in this case" as being whether the sneeze on December 22, 1974, was an independent intervening cause of the onset of symptoms

---

1. The version of section 54 in effect at the time of appellee's injury and apparently applied by the Commissioner was that enacted by P.L. 1965, ch. 408, § 3, as amended by P.L. 1965, ch. 489, § 5.

or whether the onset of symptoms flowed from the original injury. That question of fact the Commissioner decided in favor of appellee, and his decision in that regard is supported by adequate evidence.

There was also testimony before the Commission concerning appellee's heart condition. Mr. Gullifer testified that as long ago as 1943 he had suffered from heart disease. He indicated that before the sneeze his back did not preclude him from carrying out the functions he once performed as controller at Granite. The doctor described his patient's condition as "moderately severe heart disease" and stated that this infirmity was the "primary cause of limitation" on his activity. However, the doctor testified that before the sneeze incident the back condition alone would have prevented appellee from making a living doing heavy work and that in the period following the sneeze the back condition alone would have precluded employment.

Appellee also indicated that after leaving Granite in October, 1973, more than a year before re-injuring his back, he began to draw total disability payments under the federal Social Security Act. The stated reason for that total disability was his heart condition. Appellant testified that when he left work in October of 1973 he planned to return to work but that his back condition precluded his return.

The employer contends on appeal that the Commissioner erred in finding that on December 22, 1974, the appellee became incapacitated for work within the meaning of the Workmen's Compensation Act. Because Mr. Gullifer had left employment over a year before the sneezing incident and was receiving total disability payments under the Social Security Act, appellant argues that appellee is not entitled to compensation for incapacity caused by aggravation of the 1971 injury.

■ We find no sound basis for importing into the Act the exception that appellant asks us to read into it. Starting with the Commissioner's finding, supported by evidence, that the symptoms in 1974 were the result of the compensable injury in 1971, appellant asks us to hold that the additional compensation normally available to an employee as a result of further disability arising out of an earlier compensable injury must be denied where the employee is not working at the time he suffers the further disability. There can be no question that if appellee had been still working for Granite on December 22, 1974, the 1974 incapacity found to result from his 1971 injury would have been compensable. *Walker's Case,* 122 Me. 387, 120 A. 59 (1923). Moreover, by application of 39 M.R. S.A. § 54 and § 2(2)(A), his compensation would have been based on "the amount which he was receiving at the time of the injury"; that is, on March 19, 1971. The injury is compensable even though a pre-existing heart condition may have contributed to his disability either in 1971 or 1974. *Wadleigh v. Higgins,* Me., 358 A.2d 531 (1976); *Gagnon's Case,* 144 Me. 131, 65 A.2d 6 (1949). Loss of earning capacity, not actual loss of income, is the basis for any award under the Act. *Clark's Case,* 120 Me. 133, 113 A. 51 (1921). In *Willette v. Statler Tissue Corp.,* Me., 331 A.2d 365 (1975), we dealt with the situation arising where an employee who works for successive employers sustains during his first employment an injury that is the sole cause of a recurrence of symptoms manifested while he is working for the second employer. We held the employer at the time of the original injury liable for the compensation for incapacity resulting from the recurrence.

Decisions of this Court holding that there is no compensable loss under the Act if the injurious event does not diminish a claimant's pre-injury capacity to earn a living are not applicable to the present case. *Cf., e. g., Cook v. Colby College,* 155 Me. 306, 154 A.2d 169 (1959). Appellee clearly had earning capacity when he was injured in 1971. Also to be distinguished are cases involving injuries in successive employments where the second injury is not caused solely by the first. *Cf., e. g., Dunkin Donuts of America, Inc. v. Watson,* Me., 366 A.2d 1121 (1976); *Kidder v. Coastal Construction Co., Inc.,* Me., 342 A.2d 729 (1975);

*Kidder v. Coastal Construction Co., Inc.,* Me., 309 A.2d 119 (1973). Unlike those cases, the present case involves a single compensable injury rather than successive, separately compensable injuries. A similar observation disposes of appellant's argument that 39 M.R.S.A. § 2(2)(F) [2] limits the employer's liability in this case. That provision, virtually unchanged since enactment of the original Workmen's Compensation Act in 1915, was designed to make it clear that an injured worker is not restricted to compensation for only one injury in his or her lifetime. The provision applies to separate compensable injuries, not to successive disabilities resulting from a single injury.

■ Appellant seeks to avoid the normal application of section 54 and subsection 2(2)(A) by having us hold that a person who is receiving disability payments under the Social Security Act is disqualified from receiving compensation under the Workmen's Compensation Act. We have recently noted that mere receipt of Social Security benefits does not necessarily mean that a workmen's compensation claimant no longer has earning capacity. *McQuade v. Vahlsing, Inc.,* Me., 377 A.2d 469, 471 (1977). The Commission's finding is in harmony with the policy behind the provision in section 62 of the Workmen's Compensation Act that no savings or insurance of the injured employee independent of the Act shall be taken into consideration in determining the compensation to be paid.

We conclude, therefore, that the Commissioner committed no error of law in finding that appellee became incapacitated within the meaning of the Act on December 22, 1974, as a result of the compensable injury he sustained on March 19, 1971, and in awarding him an amount referable to his wages as of that earlier date.

■ However, the Commissioner's decree provided that the appellee was entitled to compensation from the date of the sneeze "until further order of the Commission." Implicit in that decree, which was dated May 27, 1976, is a finding that appellee remained incapacitated after June 6, 1975. Testimony by both appellee and his physician indicated that by June 6, 1975, appellee had regained his condition as it had been before the sneezing incident. We find no evidence to support the decree insofar as it awards compensation for incapacity after June 6, 1975.

The entry is:

Appeal sustained.

The pro forma decree of the Superior Court is vacated.

Remanded for a finding by the Commissioner, consistent with this opinion and in accordance with the evidence, as to the duration of incapacity of the claimant attributable to the back injury.

It is further ordered that appellant pay to appellee $550 for his counsel fees, plus his actual reasonable expenses of this appeal.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

---

2. 39 M.R.S.A. § 2(2)(F) (1964):
 "The following words and phrases as used in this Act shall, unless a different meaning is plainly required by the context, have the following meaning:

 .   .   .   .   .

 2. Average weekly wages.

 .   .   .   .   .

 F. The fact that an employee has suffered a previous injury or received compensation therefor shall not preclude compensation for a later injury or for death; but in determining the compensation for such later injury or death, his 'average weekly wages' shall be such sum as will reasonably represent his weekly earning capacity at the time of such later injury in the employment in which he was working at such time, and shall be arrived at according to and subject to the limitations of this section."