William SWAN

v.

ANDREW CROWE & SONS, INC.

and

Commercial Union Insurance.

William SWAN

v.

ZACADELLI'S AUTO BODY.

Supreme Judicial Court of Maine.

Argued May 7, 1981.

Decided Sept. 16, 1981.

Samuel G. Cohen (orally), Waldoboron, for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), John M. Wallach, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK,* GODFREY, ROBERTS and CARTER, JJ.

CARTER, Justice.

William Swan, the employee, suffered a back injury in May, 1978 arising out of and in the course of his employment for Andrew Crowe & Sons, Inc. (Crowe). Swan was duly compensated by agreement, compensation ending on September 25, 1978. On October 2, 1979, Swan again suffered a back injury arising out of and in the course of his employment for Zacadelli's Auto Body (Zacadelli's). Following the second injury, Swan underwent a laminectomy and excision of the L5–S1 disc. Swan filed a Petition for Further Compensation against Crowe, and a Petition for Award of Compensation against Zacadelli's. The petitions were consolidated for hearing, and in a single opinion the Commissioner determined that Swan was totally disabled from October 2, 1979 until March 10, 1980, and 50% partially disabled thereafter. The Commissioner stated:

I find as a fact, and conclude as a matter of law, that it would be mere conjecture to attempt to apportion the responsibility of both injuries to this period of disability, and accordingly, conclude as a matter of law, that each Employer is 50% responsible for same.

Swan appeals from the pro forma decree affirming the Commission's decision, arguing (1) that the Commissioner erred in apportioning liability equally between the employers, and (2) that the Commissioner erred in his assumed finding that Swan did not engage in a good faith work search after March 10, 1980. We find no error in the Commissioner's ruling, but we remand

* WERNICK, J., sat at oral argument and participated in the initial conference but retired before the opinion was adopted.

1. The record contains the transcript of only the April 1, 1980 hearing, although there was ap-

solely to allow Swan the opportunity to produce additional evidence of a good faith work search.

At the April 1, 1980 hearing, John Wickenden, apparently an orthopedic surgeon,[1] testified that to a reasonable medical probability he would apportion responsibility between the two incidents to Swan's resulting disability as follows:

the initial May, 1978 injury is far more significant, and I said I could live with 90 percent causal responsibility, and that the October 2 episode is far less significant and with an element of the arbitrary and subjective, I call that 10 percent.

On cross-examination, Dr. Wickenden testified that his attempt to allocate responsibility was based not on any recognized formula or standard tables, but primarily on his judgment of what was happening anatomically at the disc space in Swan's lower back, i. e., Dr. Wickenden judged that 90 percent of the total disc protrusion was caused by the first incident, while 10 percent was caused by the second incident. In light of the "arbitrariness" involved in his judgment, Dr. Wickenden testified that he would also feel comfortable with allocations ranging from 70%–30% to 98%–2%.

Dr. Wickenden told Swan that he could do light work as of March 10, 1980. Swan testified about his efforts to find work between March 10 and April 1 (the date of the hearing).

## I.

▆▆ In *Kidder v. Coastal Construction Co., Inc.*, Me., 342 A.2d 729 (1975) (*Kidder II*), we stated that:

where more than one employer is responsible for an employee's disability, the fixing of liability for compensation upon each employer in proportion to his responsibility is not only logical and equitable, but consistent with the general purpose of our compensation Act.

parently a hearing in January, 1980 at which Dr. Wickenden also testified. The record before us contains no evidence of Dr. Wickenden's expert qualifications.

*Id.* at 734 (emphasis deleted). *Kidder II* mandates "that a finding be made that the two compensable injuries occurring in the course of and arising out of two successive employments combined to produce a single disabling injury." *Dunkin Donuts of America, Inc. v. Watson,* Me., 366 A.2d 1121, 1125 (1976). In such a case, the Commissioner must determine as a fact whether the causative contribution of each employer to the resultant medical disability can be ascertained. *Id.* But:

> Should the expert medical evidence . . . not furnish a *solid basis* for allocating the proportionate responsibility, thus necessitating resort to conjecture and speculation, then and only then would the Commissioner be justified, under *Kidder II* principles, in entering a decree of equal apportionment.

*Id.* (emphasis added).[2]

█ In the instant case, Swan did not request that the Commissioner make specific findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99. Therefore, we must resolve all questions of fact in favor of the Commissioner's decision, and sustain his decision unless the record fails to disclose any reasonable basis for doing so. *Gordon v. Colonial Distributors,* Me., 425 A.2d 625, 628 (1981). Swan argues that Dr. Wickenden's uncontroverted testimony required the Commissioner to apportion responsibility more heavily upon Crowe. Even assuming that Dr. Wickenden was qualified to give an expert medical opinion (see note 1 *supra*), the Commissioner was not obliged to accept his testimony. *Dailey*

*v. Pinecap, Inc.,* Me., 321 A.2d 492, 495 (1974); *see Gordon,* 425 A.2d at 628. The Commissioner heard both Dr. Wickenden and Swan describe Swan's condition after both incidents. Especially in light of the admitted element of "arbitrariness" in Dr. Wickenden's opinion, we cannot say that there is no rational basis for the Commissioner's determination that he had not been furnished with a solid basis for allocating proportionate responsibility. Therefore, we cannot say that the Commissioner improperly apportioned liability equally between Crowe and Zacadelli's. *Dunkin Donuts of America, Inc.,* 366 A.2d at 1125.

## II.

█ Swan does not dispute the Commissioner's determination that as of March 10, 1980 Swan was no longer *physically* totally disabled. Rather, Swan contends that the Commissioner erred in not finding that the employee had met his burden of proving that he engaged in a good faith work search which failed either because employers would not hire people of his limited capacity to do the work within his tolerance or because there was no market in his community for the restricted work of which he was capable.

Because Swan is the moving party on both petitions in this case, he carried the ultimate burden of proving his entitlement to total compensation by proving his good faith work search by a fair preponderance of the evidence. *See Dunkin Donuts of*

---

2. We have *repeatedly* treated the apportionment question as one of attributing responsibility to each employer (or carrier) for the employee's resulting *disability*. *See, e. g., Robbins v. Bates Fabrics, Inc.,* Me., 412 A.2d 374, 376–77 (1980) (apportionment according to contribution to the disabling condition); *Pottle v. Brown,* Me., 408 A.2d 1011, 1013 (1979) (same); *Widdecombe v. National Sea Products, Inc.,* Me., 389 A.2d 39, 41 (1978) (apportionment according to causal connection to the disability); *Dunkin Donuts of America, Inc. v. Watson,* Me., 366 A.2d 1121, 1125 (1976) (apportionment according to each employer's contribution to resultant medical disability). Where successive incidents contribute to a single indivisible injury which results in disability, evidence of the causative contribution by each employer to the single indivisible *injury* will also be evidence upon which the Commissioner may determine each employer's causative contribution to the resulting *disability*. *See Kidder v. Coastal Construction Co., Inc.,* Me., 342 A.2d 729, 734 (1975). But it should be made clear that it is the extent of each employer's contribution to the employee's *disability* which is at issue. This is in keeping with the basic purpose of the Workers' Compensation Act which is to provide compensation *for loss of earning capacity*; "the only injuries compensated for are those which produce disability." *Levesque v. Shorey,* Me., 286 A.2d 606, 609 (1972) *quoting* A. Larson, Workmen's Compensation § 2.40.

*America, Inc. v. Watson*, Me., 366 A.2d 1121, 1126 n. 4 (1976); *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162 (1975). Here, the hearing was held on April 1, 1980, only three weeks after Swan was told on March 10 by Dr. Wickenden that he could perform light work. Swan then had not received final answers on the majority of his applications for work, and the reasons given for not hiring him by the two employers who had responded were unrelated to Swan's disability. Clearly, in light of this evidence the Commissioner did not err in awarding only partial compensation after March 10. However, because of the short span of time between Swan's recovery of partial capacity to work and the date of the hearing, we believe that in fairness to Swan this case should be remanded, and Swan should be given the opportunity to submit evidence solely of his work search efforts subsequent to April 1, 1980. Should the supplemented record demonstrate both a good faith effort to obtain employment commensurate with Swan's physical limitations and a failure in that task because of his injury or because no such work was available in his community, the Commissioner might conclude that Swan met his burden of proof and is entitled to retroactive payments for total incapacity from March 10, 1980. *Cf. Dunkin Donuts of America, Inc.*, 366 A.2d at 1126 (employee given opportunity on remand to submit evidence of work search where last hearing had been held on same date that employee had been discharged from work).

The entry is:

Judgment affirmed in part and vacated in part.

Remanded to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

It is further ordered that the employee be paid an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal, one-half by Andrew Crowe & Sons, Inc., and one-half by Zacadelli's Auto Body.

All concurring.