50

CLAIR W. FOSTER *vs*. CONGRESS SQUARE HOTEL COMPANY.

Cumberland.        Opinion March 19, 1929.

*Cook, Hutchinson, Pierce & Connell*, for plaintiff.
*Hinckley, Hinckley & Shesong*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, PATTANGALL, JJ.

PHILBROOK, J.   This is an action brought to recover damages for personal injuries sustained by the plaintiff because of the alleged negligence of the defendant.

Epitomizing his amended and substituted declaration, contained in three counts, it is the plaintiff's claim that on the ninth day of January, 1927, and for some time prior thereto, the defendant was engaged in constructing a hotel building and in connection with, and as an aid to that construction, owned, maintained and operated a hoisting elevator located in said building and running from the top floor thereof to the basement, said elevator being used to raise and lower materials and workmen to and from different floors of the building during the process of construction. He describes the control of the elevator by means of attachments to the engine used to raise and lower the same, which attachments, in part, consisted of a steel cable wound around a drum having ratchets

and pawl which, when kept in proper repair, held the drum and prevented the elevator from descending or falling. He claims that at the time of the accident, and for some time prior thereto, the defendant had carelessly and negligently permitted the pawl to become worn, bent, out of shape, defective, unfit, and unsafe, so that it did not properly hold the drum stationary, and at times due to its defective condition, slipped out of place, thereby permitting the drum to revolve, the cable to unwind, and the elevator to fall or descend, all of which the defendant knew or in the exercise of reasonable care should have known.

On January 9, 1927, so says the plaintiff, he was employed by a sub-contractor on the building, Leo I. Bruce by name, and on that day, as part of the regular duties incident to his employment, was engaged in straightening some heavy steel jacks on the elevator which was then standing at the twelfth floor of the building; that due to the defective condition of the pawl, and without negligence on his part, the elevator fell suddenly and without warning to him; that by reason thereof he lost his balance, plunged forward into the elevator shaft just above the descending elevator and dropped a distance of approximately thirteen stories. His injuries were severe and the jury awarded him a verdict for five thousand dollars. The case comes to us on the usual formal motion alleging that the verdict is against law, against the charge of the Justice presiding, against evidence, against the weight of evidence, and because the damages are excessive. A bill of exceptions also accompanies the motion.

Defendant pleaded the general issue "and for a brief statement of special matter of defense to be used under the general issue pleaded, the said defendant further says that the plaintiff, who was the injured employee, claimed and was awarded compensation against his employer for the same injuries for which he is now seeking recovery, and under such circumstances is barred from bringing this common law action."

*Exceptions.* Nine exceptions were allowed but exceptions two and three were not pressed. The first exception is to the refusal of the presiding Justice to direct a verdict for the defendant. This exception is based upon the legal questions raised by the brief statement of special matter of defense just quoted, which, in effect, is a

plea in bar. In his brief counsel for defendant frankly states that since this exception would be argued in detail he did not deem it necessary to consider the general motion. The validity of this exception depends upon the interpretation and application of Section twenty-six of our Workmen's Compensation Act.

Omitting certain parts not bearing upon the present controversy, that section in its latest amended form, P. L. 1921, Chap. 222, Sec. 8, reads as follows:

"When any injury, for which compensation is payable under this act, shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act, any employer having paid the compensation, or having become liable therefor, shall be subrogated to the rights of the injured employee to recover against that person." . . . "The failure of the employer or compensation insurer in interest to pursue his remedy against the third party within ninety days after written demand by a compensation beneficiary, shall entitle such beneficiary or his representatives to enforce liability in his own name, accounting for the proceeds in the manner further provided by the act."

The plaintiff admits that with reference to this accident he did file with the Industrial Accident Commission a petition for award of compensation against his employer, Leo I. Bruce, and that he received compensation for a period of time under an award made by the Commission. Therefore the defendant claims that this proceeding for compensation on the part of the plaintiff deprives him of any right of common law action against the Congress Square Hotel Company; that any right of action he might have against this defendant must arise out of the statute known as the Workmen's Compensation Act; and being dependent upon the statutory action, his writ must show that the action is brought under the statute and must be in conformity thereto.

Hence, the defendant argues that the plaintiff should set forth,

in his declaration, the following essentials in order to present a proper action under the statute:

First — That he was an employee of Leo I. Bruce.

Second — That he exercised his option and elected compensation.

Third — That compensation was claimed and awarded.

Fourth — That the employer or compensation insurer in interest failed to pursue his remedy against the third party within ninety days after written demand by the plaintiff.

None of these allegations appear in plaintiff's writ.

In the light of the statutory provision, whereby the injured person may enforce liability in his own name against the tortfeasor, upon the failure of the employer or compensation insurer to pursue his or its remedy against the third party within ninety days after written demand by a compensation beneficiary, the first exception raises four points for consideration:

I. By choosing to apply for and accepting compensation under the Workmen's Compensation Act, does the injured person, *ipso facto*, lose his right to bring a common law action against a tortfeasor, who is other than the employer.

II. If he thereby loses that right, and is confined to an action to be brought only when the employer or insurance carrier has refused or failed to bring action after the written request above referred to, what must he allege in his declaration.

III. What is the effect upon the right of the injured person to bring suit if the employer or insurance carrier waives the right to bring action under the statute.

IV. If such waiver is shown may the injured person bring suit before the expiration of ninety days after the written demand provided for by statute?

No one of these four points has ever been presented to this court for decision.

The right of the compensation beneficiary to bring action against the tortfeasor, when the employer or compensation carrier fails to bring such action within ninety days after written demand by the beneficiary so to do, is provided by the amendment made in 1921. As our Compensation Act stood before this amendment, we should not hesitate to say that by the overwhelming weight of authority

the beneficiary would be barred from bringing suit against the tortfeasor if he applied for and was awarded compensation. The amendment of 1921 introduced a new and radical change in favor of the injured person.

Examination of the compensation acts of forty-three states and three territories, the other five states having no such acts, reveals the fact that in only one of them, Wisconsin, is to be found any provision similar to that in our amendment of 1921. While the Wisconsin court has ruled upon many provisions of its compensation act, it has not, so far as we can discover, ruled upon any of the four points here being considered. The paucity of cited authorities is therefore thus explained.

The amendment of 1921 is remedial and like other acts of that nature is to be so construed as most effectually to meet the beneficial end in view and to prevent a failure of the remedy. *Quimby* v. *Buzzell*, 16 Me., 470. The liberal construction rule imposed by the legislature, with a view to carrying out the general purpose of the Act, applies to Section 26. *Donahue* v. *Thorndike & Hix*, 119 Me., 20.

An injured employee, applying for and receiving compensation, when his injuries result in total disability, may recover only for a fixed amount and for a fixed time. His recovery is also limited to cases where the usefulness of a member or any physical function thereof is permanently impaired. In cases where disability is less than total, proportionate limitations exist. It is common knowledge that tortious injuries may result in damages exceeding in amount, and varying in kind from, any damages recoverable under the Compensation Act.

In *Borgnis* v. *Falk Company*, 147 Wis., 327; 133 N. W., 209; 37 L. R. A. (N. S.), 489, a case frequently cited, the Wisconsin court refers to its workmen's compensation act as follows:

"The legislature, in response to a public sentiment which can not be mistaken, has passed a law which attempts to solve certain pressing problems which have arisen out of the changed industrial conditions of our time. It has endeavored by this law to provide a way by which employer and employee may, if they so choose, escape entirely from that very troublesome and economically absurd luxury known as 'personal injury litiga-

tion,' and resort to a system by which every employee not guilty of wilful misconduct may receive at once a reasonable compensation for injuries accidentally received in his employment, under certain fixed rules, without a law suit and without friction."

Under compensation acts not having provisions like the 1921 amendment of our Act, if the injured employee suffers. damage through the tort of a third person, but to avoid the "absurd luxury known as personal injury litigation," seeks compensation at the hands of his employer, he finds himself faced with a plea in bar if he later seeks to obtain from the tortfeasor such additional damages as he would be entitled to had he chosen to first bring suit at common law. Moreover, under such compensation acts, if the employer, subrogated to the right of the employee to bring suit, declines to indulge in the "absurd luxury known as personal injury litigation," then the tortfeasor may thereby enjoy immunity from his wrong.

Under the rules of construction just above stated, we do not hesitate to say that the inability of the injured person to obtain full damages, and the immunity of the tortfeasor, are among the evils which the legislature intended to remedy by the amendment of 1921.

That amendment, granting an employee the right to bring a common law action, even though compensation had been awarded and received, when the employer fails to pursue the subrogated right, after written demand to do so, clearly shows that the legislature did not intend that the employee should lose his right of common law action against the tortfeasor, but the right to institute such suit is suspended during the period specified in the statute, and revived if the employer fails to act in accordance with the demand. During the ninety-day period after demand to bring suit, no one but the employer could institute the action against the tortfeasor which the common law gave the employee the right to institute. But the right of the employer to bring suit came to an end, not by the passage of time, but by the voluntary relinquishment of that right through express waiver. Such waiver is both possible and allowable. *Smith* v. *Boiler Co.*, 119 Me., 552. The provision for subrogation in the Compensation Act was made for the benefit of the employer

and the insurance carrier. "A statutory, or even a constitutional provision, made for one's benefit, is not so sacred that he may not waive it." *Bank* v. *Marston*, 85 Me., 488.

If, instead of waiving the subrogated right, the employer or insurance carrier had chosen to bring suit, he or it would have the full ninety days after demand in which to institute the action, or could have done so on the very day of demand. If waiver was the answer to demand to bring suit, why could not the employee proceed at once? The statute contains no provision forbidding it. The liability of the tortfeasor is not affected by the ninety-day provision and provides him no adequate defense in this action.

After the waiver, the plaintiff commenced the instant action "in his own name" as the statute provides. He did not sue a statutory action. He sued the action which the common law gave him when and because he became injured. One suing a statutory action must allege and prove defined conditions, but that is not this case. When the right of the employer to bring suit had expired by waiver, then the employee sued the common law action which he possessed.

Subrogation, under the statute, is a matter of defense, and the defendant apparently appreciated that fact when it pleaded as it did by way of brief statement. Since the Workmen's Compensation Act is remedial, and directed toward simplification of procedure, such simplification would be denied if it should be held that the plaintiff should allege and prove the four essentials, as above claimed by defendant. The issues of fact in the case at bar center about tortious liability of the defendant, as governed by familiar legal principles, and the plaintiff should not be required to allege and prove those matters which are not issues.

This case is easily distinguishable from *Donahue* v. *Thorndike & Hix*, supra, and *Creamer* v. *Lott*, 124 Me., 118. In the former the action was brought in the name of an injured employee by and for the benefit of the insurance carrier. The Court there said that the action "is in form an action at common law." The defendant objected to all evidence tending to show payments to the plaintiff by the insurance carrier on the ground that there was no allegation of any such payments in the declaration. The evidence was received *de bene*, the contention of the defendant being that the action could not be maintained for the benefit of the insurance carrier

without such allegation and proof. At the close of the evidence, the plaintiff offered an amendment declaring that she had received compensation, and that at the time of her injury she was in the employ of a person who was an assenting employer under the Workmen's Compensation Act. The Court held that the liability of the tortfeasor to pay damages was not affected by the election of the injured person to receive compensation, and that the essential allegations as to defendant's liability must be the same whether the action be brought in the name of the employer or employee. The Court further held that the amendment, though allowable, was unnecessary and the evidence of payment by the insurance company immaterial.

In *Creamer* v. *Lott*, supra, there was no proof that compensation had ever been claimed and awarded, and the Court held that the action, being for the benefit of the insurance company, could not be maintained since claim and award of compensation were conditions precedent to instituting the suit then at bar. In the Donahue case, compensation had been paid but there was no allegation thereof, and the court did not require technical accuracy of pleading. In the Creamer case, no compensation had been paid. But in both cases, the actions were brought under statutory provisions, without which the two actions could not have been brought. In the case at bar, the plaintiff brings an action which is his right to bring under the common law.

In *McGarvey* v. *Independent Oil and Grease Co.*, 146 N. W., 895, the Wisconsin court says, "It is conceded, as the fact is, that in case of an employee in course of his employment being injured by the actionable negligence of a third person, a *statutory* remedy accrues to him for compensation against his employer, and a *common law* remedy against such third person." (Italics ours.) This shows error in the defendant's claim that the action at bar is statutory. Since it is an action at common law, the claim of the defendant as to the four essentials in the declaration is not well founded. The first exception can not be sustained.

By its fourth exception the defendant objects to any parole attempt to prove the contents of a letter unless it first be shown that the same has been lost or destroyed, or in the hands of the adverse party who fails to produce it after proper notice.

From the record we learn that under date of June 15, 1927, the plaintiff, by his attorneys, wrote the insurance carrier and the plaintiff's employer, making demand that they pursue their subrogated right to bring action against the tortfeasor. (Ex. 1.) Under date of June 27, 1927, (Ex. 2) the insurance carrier answered the letter of June 15, waiving its right to bring such action. In that letter the writer distinctly stated the subject of his communication as "Re: *Clair Foster* v. *Leo I. Bruce.*" In the body of the letter he inadvertently used the name of Bruce where the name of Foster should have been used. Counsel for plaintiff asked the writer, "After that (meaning after June 27) did you receive a letter from me confirming your understanding and suggesting to you that where you had used the name 'Bruce' in the first paragraph of your letter you had probably made a mistake and meant 'Foster'?" The witness testified that he did make that mistake. The last named letter was not offered in evidence, nor was it shown to have been lost or destroyed, nor in the hands of the adverse party who failed to produce it after proper notice. Against objection the question and answer were admitted. In the present case that ruling could not possibly prejudice the rights of the defendant. While the testimony was technically inadmissible and could properly have been excluded, it was practically harmless. To sustain exceptions for such a cause would be more nice than wise. *Bessey* v. *Herring,* 121 Me., 539; *Hovey* v. *Hobson,* 59 Me., 256, 273.

Exceptions five and six may be properly discussed together. Exception five arose from interrogation of S. F. Prime, agent of the insurance carrier, authorized to adjust claims in Maine, as to whether he had authority to state in Exhibit 2 that the insurance carrier would not bring action under its right by subrogation. Exception six arose from interrogation of the same witness as to the intention of his company in the future not to bring action against the tortfeasor. The agency and general authority of Mr. Prime as to adjustment of claims was practically admitted by the abandonment of exceptions two and three, and in argument of exceptions five and six the defendant relies only upon the ground of immateriality. The admission of testimony that is merely irrelevant or immaterial, and which is not shown to have been prejudicial, is not the subject of exception. *Davis* v. *Alexander,* 99

Me., 40. In the case at bar the defendant asserts but does not show the admitted testimony to be prejudicial.

Exception seven relates to the exclusion of a certain interrogatory in the deposition of Arthur W. Allen, who was employed by the defendant as its construction manager on the building being erected in January, 1927, being the building where the accident to the plaintiff occurred. The deposition was offered, and the excluded interrogatory made, by the defendant. The excluded interrogatory is as follows:

"Q. If any of the teeth in this particular ratchet had been broken, or worn to any extent, so that they would not hold, would you have noticed it from your examination?

*Mr. Connell* (Counsel for plaintiff) : The inspection up to that time had been casual.

*Mr. Hinckley* (Counsel for defendant) : Here is a straight question, whether he would have noticed it.

*The Court* : I shall exclude it."

The condition of the teeth of the ratchet was a fact to be decided by the jury, under proper testimony, but to allow the witness to state whether he would have noticed it is invading the province of the jury. Proper inquiries as to the extent of his observation, his opportunity to do so, and the circumstances surrounding his opportunity, would have been admissible to show whether he, or any proper person, could have determined whether the teeth in the ratchet had been broken or worn to any extent. These inquiries would also lay a foundation for the jury to determine whether the witness would have noticed the condition of the teeth. This issue could then be decided by the jury and not by the opinion of the witness. The question, in the form in which it stands, was properly excluded.

Exception eight relates to the exclusion of certain questions addressed to Augustus G. Lejonhud who, in substance, had testified that he was a hoisting engineer; that he had made a careful examination of all parts of the machinery used in connection with the operation of the elevator in question; that he had been a hoisting engineer for fifteen years, two-thirds of that time employed in this kind of work; that he was thoroughly familiar with this particular kind of a hoisting engine and its workings. While giving

his testimony, he was shown the dog used in holding the ratchet, it being claimed that this had been bent on account of the weight while holding the elevator in the ordinary way.

The excluded questions are as follows:

"Q. Having in mind, of course, the dog used in connection with the operation, in what ways could it be bent? (Objected to.)

*The Court*: That is uselessly general. Come right down to something definite.

Q. Assuming that the elevator started to drop, and the dog was thrown into the ratchet, would that bend it? (Objected to.)

*The Court*: There is no testimony that he knows how this machine was geared and rigged at the Portland plant. (Question excluded.)

Q. Then I will ask again: Can you conceive of any way that it could be bent except by throwing it into the ratchet while the elevator was descending? (Objected to.) (Excluded.)

Q. Would there be any possible way, that you can think of, of bending it while it is in place? (Objected to.)

*The Court*: That is, engaged in the ratchet?

Q. Yes, engaged in the ratchet. While it is still in the ratchet performing its ordinary work of holding the elevator, would there be any possible way of bending it while there? (Objected to.)

Q. Would there be any way that that could be bent while in its place holding the elevator in the ordinary way?"

After brief discussion between counsel, these questions were excluded.

In argument of such exclusion, defendant urges that it was an abuse of judicial discretion to refuse its admission. No other ground in support of the exception is advanced. We can not sustain the exception upon this ground.

Exception nine, as it appears in the bill of exceptions, begins with this language:

"At the close of the charge of the Presiding Justice the defendant took exceptions as follows: (Exceptions taken by the defendant to that part of the charge stating effect on dog

under different uses, and especially to that part of the charge to the effect that the dog would be bent under certain pressure.) Part of the Judge's charge covering this matter is as follows."

Then follows only an excerpt from the charge. The entire charge does not appear in the record. If charge is objected to, it must be printed; quoting objectionable language in the bill of exceptions is insufficient. Exceptions have never been allowed to the alleged part of the charge contained in the bill of exceptions. *State* v. *Winslow*, 102 Me., 399.

*Motion.* Since the record does not show that any errors occurred in the charge with reference to the ordinary defenses, such as burden of proof, contributory negligence, assumption of risk, and negligence of fellow servant, we must assume that the law covering these points was correctly stated and that under proper instructions these issues of fact were decided by the jury in favor of the plaintiff. After a careful examination of testimony, we are unwilling to overturn the findings of the lawfully ordained arbiters of issues of fact:

*Motion and exceptions overruled.*