Dean A. MURRAY, Sr.

v.

CITY OF AUGUSTA and U. S. Fidelity & Guaranty Company.

Supreme Judicial Court of Maine.

Dec. 4, 1978.

McTeague, Higbee & Tierney by Maurice A. Libner (orally), Patrick N. McTeague, Brunswick, for plaintiff.

Robinson, Hunt & Kriger, by James M. Bowie (orally), James S. Kriger, Sarah M. Allison, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

This is an appeal by the defendants from a pro forma decree of the Superior Court affirming a decision of the Workers' Compensation Commission under which Dean G. Murray, Sr., on his petition, was awarded further compensation to be paid exclusively by the City of Augusta and its insurer, U. S. Fidelity & Guaranty Company.

We sustain the appeal and order the case remanded to the Commission for further proceedings consistent with this opinion.

## FACTS

On July 17, 1972, while working on the Augusta Police force, Mr. Murray was injured and received workers' compensation which terminated on March 1, 1973. Treatment for the 1972 injury in major part consisted of the surgical removal of the "L–5 disc" and inspection of the "L–4 disc."

Following his recovery Mr. Murray worked for various employers, concluding with the Bath Iron Works (B.I.W.). In February of 1974 there was one episode at

B.I.W. when some low back pain was experienced. Again, in May of 1975 he experienced considerable discomfort as a result of a strain received when attempting to locate a longitudinal bar in the ribs of a ship under construction. He continued working, however, until July 12, 1976, at which time he consulted with a physician because of continued pain. On July 27, 1976, he again submitted to surgery, at which time scar tissue was resected from the site of the 1972 surgery. Total disability lasted until February 8, 1977, at which time Mr. Murray was restored to a moderate work capacity which did not require excessive lifting, bending, or twisting. Although diligent efforts were made to obtain employment within the limits of his capability, Mr. Murray has been unable to do so.

Mr. Murray's employment at B.I.W. brought him within the jurisdictional limits of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). 33 U.S. C.A. §§ 901 et seq. Mr. Murray also applied for and received unemployment compensation benefits for approximately one year during the time in which the award for total incapacity was viable.

B.I.W. was not made a party to this proceeding at any time.

The Commissioner made an award of total disability[1] and ordered the defendants in this case to bear the full financial responsibility for compliance therewith.

## I

■ Appellants have argued that the Commission erred in refusing to set off amounts received by Mr. Murray in the form of unemployment benefits. This issue has very recently been resolved adversely to the position taken by the appellants. In *Page v. General Elec. Co.*, Me., 391 A.2d 303, 309 (1978), we concluded that

> neither Maine's Unemployment Security Law, nor its Workmen's Compensation Act, provides any basis for denying or reducing the amount of workmen's com-

pensation payments on the ground that the claimant is receiving unemployment compensation benefits.

This segment of the decree appealed from is without error.

## II

Since Mr. Murray had filed a petition for compensation under the Longshoremen's and Harbor Workers' Compensation Act, the appellants contend that the Workers' Compensation Commission lacked jurisdiction over the petition for further compensation because Mr. Murray had elected to pursue an alternative remedy.

■ In 1972 the LHWCA was amended to extend its jurisdiction to include persons engaged in maritime employment "including a ship repairman, shipbuilder and shipbreaker." 33 U.S.C.A. § 902(3). We will not presume a preemption by the federal government since the amendment to LHWCA does not contain such definitive language that we can infer a congressional attempt to preempt jurisdiction over all injuries occurring in the covered areas. *Johnson v. Texas Employers Insurance Association*, Tex.Civ.App., 558 S.W.2d 47, 50–52 (1977). The Act contains no language that demonstrates (1) it was the clear and manifest purpose of Congress to preempt the field, or (2) that the exercise of dual authority is repugnant to the congressional objective. *Poche v. Avondale Shipyards, Inc.*, La., 339 So.2d 1212, 1218 (1973).

■ The doctrine of election of remedies is not applicable in any event to the situation illustrated by the facts of this case. Minimally, an election cannot be said to have occurred until the chosen remedy has been pursued to a viable judgment. *United States v. Oregon Lumber Company*, 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261 (1922). Here the first claim successfully pursued to an award was against the defendants, and the record contains nothing from which we can infer that any award has been made under the LHWCA.

This position is without merit.

---

1. The decree awarded total disability commencing as of *July 1, 1975*. At oral argument it was agreed that this date was in error and should

have been *July 12, 1976*. Since the case is being remanded, the decree as amended will, of course, reflect the accurate date.

### III

We now turn to appellant's final argument asserting Commissioner error in failing to apportion responsibility for compensation between the City of Augusta and the B.I.W.

After a factual recitation of Mr. Murray's employment history, including the injury requiring the 1972 surgery but without making any finding concerning linkage between the 1974 and 1975 B.I.W. episodes and the 1976 surgery, the Commissioner stated:

> The burden of proof is on the claimant to show that his ultimate disability is related to his compensable injury of July 17, 1972. The primary issue is whether the 1972 injury is *a substantial factor* in causing the ultimate disability. This factual issue is decided in the affirmative. The 1972 surgery formed scar tissue around the nerve root necessitating further surgery in 1976.

(emphasis supplied)

The Commissioner also found that Mr. Murray, having made reasonable but unsuccessful efforts "to obtain work within his physical tolerance," had failed to do so and was, therefore, "[u]nder Maine Workmen's Compensation Law . . . totally disabled." The finding of total disability is not questioned in this appeal nor, after giving deference to the Commission's expertise, could it be since the result is fully supported by the evidence. *Michaud v. Thayer Hospital Associates*, Me., 391 A.2d 1193 (1978).

Our problem is to understand the rationale of the Commissioner in arriving at the ultimate result. We note at least two probabilities that remain unclarified by the decree and, in our view, require elucidation.

Initially, it should be recalled that no conclusion was reached as to whether the 1974–1975 B.I.W. episodes were also "substantial factor[s]" in causing the "ultimate disability." Otherwise stated, were the 1974–1975 injuries factors which, in combination with the 1972 injury, produced a "single indivisible disabling injury," thus subjecting both employers to liability for compensation payments? *Kidder v. Coastal Construction Co., Inc.*, Me., 342 A.2d 729, 734 (1975). We do not know whether the failure of the Commissioner to consider the 1974–1975 B.I.W. episodes was because (1) they were deemed not to have been factors in the 1976 disability, or (2) since B.I.W. was not joined as a party, the Commissioner felt jurisdiction was lacking to consider B.I.W.'s contribution to the ultimate disability.

From the language of the decree it is apparent that the approach approved in *Richardson v. Robbins Lumber, Inc.*, Me., 379 A.2d 380, 383 (1977), was adopted, namely, that liability attaches if it is shown that an initial "work-related injury remained a substantial factor in causing the ultimate disability," despite an intervening non-work-related incident. *Richardson*, however, does not reach the issue that arises when the intervening injury is work-related, as it was in *Kidder.*

We have reviewed the testimonial record carefully. The surgeon who performed the 1972 operation for removal of the L–5 disc was not a witness. However, the orthopedic surgeon who operated in 1976 was privy to the prior medical records and did testify. Ultimately, after Mr. Murray failed to respond to more conservative treatment, this latter surgeon performed a bilateral decompressive laminectomy and scar tissue was removed at the level of "L–5 S–1," but no "recurrent disc" was found. Asked concerning any relationship between the scarring found at surgery in 1976 and the 1972 injury and surgery, the doctor responded:

> I would say it is related. It's still part and parcel of the original problem.

Referring to the 1975 episode, he testified:

> That incident could not cause any scarring. It could cause a strain or a sprain of the back.

He was then asked:

> Q Is it your opinion, Doctor, that that is what occurred here?
>
> A Yes, sir.

The record also discloses this colloquy:

> COMMISSIONER: So, do you feel that the scar tissue has been the reason for

this man's disability and the reason for this man's symptomatology?

WITNESS: It could be as a result of that strain.

COMMISSIONER: You talking about the injury in May 1975?

WITNESS: Yes.

COMMISSIONER: When he was on the end of a bar and he was doing some lifting, is that what you're saying?

WITNESS: Yes, sir.

COMMISSIONER: And, do you feel that that is the contributing cause to this man's injury?

WITNESS: It is a contributing cause, but not necessarily a direct cause to form a scar.

.    .    .    .    .

COMMISSIONER: Alright. Now, again, I'm going to ask you. Do you feel this man's disability was related to the accident that occurred back in July 17th, 1972, do you have an opinion on that, Doctor?

WITNESS: Yes. In the first place he had the original surgery because of that incident. And in the second place, the scar tissue that he had resulted from that operation. So I feel it's still connected.

On cross-examination the doctor also agreed that "the scar tissue became symptomatic" after the B.I.W. episodes.

A specialist in neurology expressed an opinion that there was a "relationship between the 1972 surgery, the incidents in 1974 and 1975 and the surgery of 1976."

A third opinion came from another orthopedic specialist who concluded that the 1974 and 1975 episodes "were aggravation[s] of the first surgery."

■ We must recognize, therefore, that the medical testimony established beyond doubt *some* relationship between the 1972, 1974 and 1975 injuries which contributed to Mr. Murray's final disability. As we see it, the City of Augusta, under the *Richardson*

approach, bears a responsibility for compensation. Under *Kidder*, however, Augusta's liability must be "in proportion to [its] responsibility." [2] 342 A.2d at 734.

Reverting to the Commissioner's decree, we recall that he found the 1972 injury a "substantial factor" in producing the ultimate result. He gave no consideration to the contribution thereto by the episodes at B.I.W., probably under the misconception that he was powerless to do so. The state of the medical testimony in the record is not adequate for us to evaluate, in the sense of apportionment, and determine the City's share, or percentage, of responsibility. We, therefore, remand the case to the Commission in order that such additional evidence may be received, if any, which, in light of this opinion will enable it to fairly fix the City of Augusta's proportion of responsibility for the compensation to be paid.

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

Further that the employer pay to the employee an allowance for counsel fees in the amount of $550 plus his reasonable out-of-pocket expenses for this appeal.

POMEROY, J., did not sit.

---

2.  It should be carefully noted that we are not attempting to impose any liability on B.I.W. It is not a party to these proceedings. We are not suggesting that sequential employers of injured employees are comparable to joint tortfeasors, each of whom might be totally responsible to one injured by their conjoined negligence.