Louis POTTLE

v.

**Alcid L. BROWN and Hartford Insurance Company.**

Louis POTTLE

v.

**Alcid L. BROWN and Liberty Mutual Insurance Company.**

Supreme Judicial Court of Maine.

Dec. 13, 1979.

John P. Foster (orally), Eastport, for plaintiff.

Rudman, Winchell, Carter & Buckley by Jeffrey T. Edwards (orally), Michael P. Friedman, Bangor, for Liberty Mutual Ins. Co.

Robinson & Kriger by James S. Kriger (orally), John M. McCallum, Portland, for Alcid L. Brown and Hartford Ins. Co.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

NICHOLS, Justice.

The issue presented by these appeals is whether the disability of the Plaintiff, Louis Pottle, was a recurrence of an injury on April 26, 1976, entitling him to further compensation; or a new injury on November 22, 1977, warranting an apportionment of liability for workers' compensation between Hartford Insurance Company and Liberty Mutual Insurance Company, which carried the compensation insurance for the Defendant, Alcid L. Brown, on those respective dates.

Upon a petition for further compensation for the original incident and a petition for award of compensation based upon the second incident, in separate decisions the Workers' Compensation Commission (1) decided there was insufficient evidence of any contribution to the employee's disability by the second incident to justify any liability for compensation by the insurance carrier at that time; and (2) ordered the insurance carrier at the time of the original incident to pay the employee further compensation.

Appeals were duly taken from the pro forma decrees of the Superior Court (Washington County) which affirmed those decisions. The Superior Court ordered the two cases consolidated for appeal.

We affirm the judgments of the Superior Court.

On April 20, 1976, the Plaintiff sustained a back injury while employed as a small-engine mechanic by the Defendant at Perry, Maine. The Plaintiff underwent a laminectomy, or removal of a disc from his spine. Hartford Insurance Company, the employer's insurer at that time, paid compensation under an approved agreement.

When the Plaintiff returned to the same job in January, 1977, no symptoms of his back injury remained. Although his doctor advised him to avoid heavy lifting, his job included lifting engines weighing up to 95 pounds.

Prior to the Plaintiff's return to work, Liberty Mutual Insurance Company replaced Hartford Insurance Company as the employer's insurance carrier.

About a month after his return to work, the Plaintiff's back began to pain him. This pain increased, and in September, 1977, he reduced his working hours. On November 21, 1977, his back pain forced him to cease work entirely. On March 10, 1978, the Plaintiff again underwent surgery, this time for removal of a recurrent disc, which consists of fragments of a disc which remain after a previous operation. Surgery also included excision of scar tissue and breaking up of nerve root adhesions at the site of the previous operation.

Thereupon the Plaintiff filed a petition for further compensation against his employer and Hartford Insurance Company for incapacity which he alleged was caused by recurrence of the April 20, 1976, injury. On the same date he also filed a petition for award of compensation against his employer and Liberty Mutual Insurance Company for compensation which he alleged was due him because of the injury on November 21, 1977.

The only evidence presented at the hearing before the Workers' Compensation Commission consisted of the Plaintiff's testimony and his neurosurgeon's deposition. The Plaintiff could not identify any specific event which marked the onset of his current disability. The physician testified that the cause of the back pain was a buildup of scar tissue, nerve adhesions, and protrusion of the recurrent disc which all impinged on nerve roots. However, the physician could not say whether the Plaintiff's activities while at work after the first operation caused his back pain, because any daily activity could aggravate the condition.

On December 27, 1978, in separate decisions the Commission dismissed the petition for award to which Liberty Mutual Company had answered and granted the petition for further compensation to which Hartford Insurance Company had answered. The Commission found that the disabling pain was caused by the scar tissue from the surgery and by the recurrent disc protrusion. The Commission concluded that the evidence was insufficient to establish the cause of the recurrent disc protrusion, and that the disability "flows substantially, if not entirely, from the injury of April 20, 1976." The Commission ordered Hartford Insurance Company, the carrier at the time of the first injury, to pay compensation for partial disability from September 15, 1977, to November 22, 1977, and total disability thereafter until that decision is modified.

■ Where successive injuries occur in the course of and arising out of two successive employments and combine to produce a single indivisible disabling injury, then liability for compensation benefits is apportioned between the two carriers in proportion to the contribution of each injury to the disabling condition.[1] *Kidder v. Coastal Construction Co., Inc.*, Me., 342 A.2d 729, 733–734 (1975). The same apportionment rule applies in the context of successive injuries occurring during a single employment where the employer had different insurers at the time of each injury. *Widdecombe v. Nat'l Sea Products, Inc.*, Me., 389 A.2d 39, 40 (1978).

On the other hand, if a second injury is a "mere recurrence" of a prior injury and the second incident *does not contribute even slightly* to the causation of the disabling condition, then the insurer at the time of the original injury is solely liable for compensation benefits. *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 367 (1975).

Such a case is this.

1. Examples of recurring injuries are shoulder dislocations following the first dislocation in an employee with no prior shoulder problems, *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 367 (1975), and back pain upon a day of bending and lifting after a back strain some time before, *Poole v. Statler Tissue Corp.*, Me., 400 A.2d 1067 (1979). An example of a second injury which aggravated the first injury and thus required contribution by the second carrier occurred in *Murray v. City of Augusta*, Me., 394 A.2d 1171 (1978). There the first injury required surgical removal of a disc, and the second injury produced pain from the strain at work as well as from the scarring at the site of the surgery. Responsibility was apportioned between the scarring, for which the first employer was liable, and the strain, for which the second employer was liable.

 Here we have no evidence that the strain from lifting at work caused the recurrent disc protrusion which resulted in disabling pain.

The Plaintiff's neurosurgeon testified that either work activity or daily routine could be responsible. Thus the Commission could not find that the second incident contributed to the disability. Significantly, the second surgical procedure revealed scar tissue from the first operation which was a cause of the disabling pain. Therefore, there was competent evidence that the first injury caused the disability, and there was nothing but conjecture that the second incident contributed thereto.[2] Given this uncertainty in the evidence, we cannot find that the Plaintiff's work activity after the first operation contributed to his subsequent disability.

Thus, the increased symptomology was not important here.

We conclude that there was no indication of physical change which could be regarded as a "second injury" to the Plaintiff within the meaning of the Workers' Compensation Act.

The entry in each appeal will be:

Appeal denied.

Judgment affirmed.

In Civil Action Docket No. CV–79–15 it is ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses incurred in the appeal.

ARCHIBALD, J., did not sit.

---

**2.** The uncertainty of the physician's testimony on contribution by the second injury explains the ambiguous language in the Commissioner's finding that the disability flowed "substantially, if not entirely" from the first injury.