Bernice B. ROBBINS

v.

BATES FABRICS, INC. and the
Travelers Insurance Company.

Bernice B. ROBBINS

v.

BATES FABRICS, INC.

Supreme Judicial Court of Maine.

March 5, 1980.

McTeague, Higbee & Tierney, G. William Higbee, Brunswick, for plaintiff.

Norman & Hanson, Stephen Hessert (orally), Portland, for Bates.

Robinson & Kriger, Sarah Allison Thornton (orally), Portland, for Travelers.

Before WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

On October 29, 1976 Bernice Breau Robbins, employee, suffered a work-related injury in the course of her employment with Bates Fabrics, Inc. (Bates), then self-insured under the Workers' Compensation Act, for which she received benefits under an approved agreement during the period from October 30, 1976 to December 8, 1976. On January 17, 1977 Robbins suffered a recurrence of disability, for which Bates again paid compensation during the period from January 18, 1977 to September 30, 1977. On May 3, 1978, when The Travelers Insurance Company (Travelers) carried the workers' compensation insurance for Bates, Robbins sustained an injury to her right hand, arm and neck while working at Bates with a uniconer.

On June 28, 1978 Robbins filed simultaneously with the Workers' Compensation Commission (WCC) two separate petitions, one against Bates as self-insured employer for an award of further compensation based on the original work-related injury pursuant to 39 M.R.S.A. § 100, and the other against Bates, her employer, and Travelers, Bates insurance carrier, for an award of compensation based on the May 3, 1978 incident pursuant to 39 M.R.S.A. § 54. The two petitions were tried as companion cases. In the case of Robbins against Bates, employer and self-insurer, the petition for further compensation was dismissed. From the Superior Court pro forma decree implementing the WCC order of dismissal, Robbins has seasonably appealed to this Court. In the case of Robbins against Bates and Travelers, the Commission found that "the employer and carrier, at the risk of the last injury, is (sic) responsible for 100% of the resulting disability." From the Superior Court pro forma decree carrying into effect this WCC order, Travelers has taken a timely appeal to this Court. The appeals were heard together and will be sustained for error at the Commission level, with remand for further hearing, findings and adjudication.

■ An employee is entitled to be paid full compensation which the Workers' Compensation Act (the Act) authorizes for any work-related injury. *Page v. General Elec. Co.*, Me., 391 A.2d 303 (1978).

■ To implement this statutory right in the case of successive injuries, apportionment according to responsibility for the employee's disability between different employers and their respective insurers or between different insurers of the same employer is "not only logical and equitable, but consistent with the general purpose of our compensation Act." *Dunkin Donuts of America, Inc. v. Watson*, Me., 366 A.2d 1121, 1125 (1976); *Kidder v. Coastal Construction Co., Inc.*, Me., 342 A.2d 729, 734 (1975).

We said in *Pottle v. Brown*, Me., 408 A.2d 1011, at 1013 (1979):

"Where successive injuries occur in the course of and arising out of two successive employments and combine to produce a single indivisible disabling injury, then liability for compensation benefits is apportioned between the two carriers in proportion to the contribution of each injury to the disabling condition (footnote omitted). *Kidder v. Coastal Construction Co., Inc.*, Me., 342 A.2d 729, 733–734 (1975). The same apportionment rule applies in the context of successive injuries occurring during a single employment

where the employer had different insurers at the time of each injury. *Widdecombe v. Nat'l Sea Products, Inc.*, Me., 389 A.2d 39, 40 (1978)."

■ The apportionment rule equally applies in the case of successive injuries during a single employment such as in the instant case, where at the time of the original injury the employer was a self-insurer under the Act, but, when the second injury occurred, the employer had an insurance company covering compensation payments.

■ If the second injury, however, is a "mere recurrence" of a prior injury and the second incident *does not contribute even slightly* to the disabling condition, then the employer and insurance carrier at the time of the original injury are solely liable for compensation benefits. *Pottle v. Brown*, supra, at 1013; *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 367 (1975); *Poole v. Statler Tissue Corp.*, Me., 400 A.2d 1067 (1979).

■ Conversely, if the first injury does not contribute in any degree to the disabling condition resulting from the second industrial incident, the employer and insurance carrier at the time of the second event are solely responsible for compensation under the Act.

In *Murray v. City of Augusta*, Me., 394 A.2d 1171 (1978), this Court set aside a finding of 100% responsibility for compensation against the first employer, where the Commissioner failed to take into consideration, and make an evaluation of, the second injury as a causative factor in the ultimate disability of the employee, the second employer not being before the Commission as a party. The case was remanded for the fixing of the first employer's share of responsibility upon further hearing.

The *Murray* problem was non-existent in the instant case, as the respective insurance carriers, Bates at the time of the first episode, and Travelers at the time of the second incident, were both parties before the Commission, and the simultaneous filing of two petitions, as was done in this case, has been viewed by this Court as the proper procedural mechanism to secure apportionment between the two insurers, when and if an employee's single indivisible disabling condition causally results from the combination of two successive injuries. *Pottle v. Brown*, supra; *Richardson v. Robbins Lumber, Inc.*, Me., 379 A.2d 380 (1977); *Dunkin Donuts of America, Inc. v. Watson*, supra. See also *Moreau v. Zayre Corporation*, Me., 408 A.2d 1289 (1979), n. 4.

Bates, however, contends that the Commission decrees were authorized by 39 M.R.S.A. § 104–B,[1] enacted by Public Laws, 1977, c. 368, effective October 24, 1977, and that under the circumstances there was no error. We disagree.

■ Were section 104–B to apply in this case and the statutory language "if the employer was insured under this Act by one carrier when the first injury took place" to be construed to contemplate the situation when the employer was self-insured at the time of the first injury, and disregarding the fact that section 104–B became effective after the first injury took place, we hold that the Commission's literal application of the section in the instant case to avoid making a determination of proportional responsibility between Bates as a self-insurer and Travelers as the second insurer was error.

The issue is, whether section 104–B, in providing that "the carrier providing coverage at the time of the last injury shall be responsible to the employee for payment of

1.  39 M.R.S.A. § 104–B. Liability when 2 carriers dispute over financial responsibility

    If an employee has sustained more than one injury while employed by the same employer and if the employer was insured under this Act by one carrier when the first injury took place and insured under this Act by a 2nd carrier when the last injury took place and if there is a dispute between the 2 carriers as to their finan-

cial responsibility concerning each injury, the carrier providing coverage at the time of the last injury shall be responsible to the employee for payment of weekly compensation benefits for the last injury and shall have the right of subrogation against the first insurance carrier for the amount of the first carrier's financial responsibility for the employee's first injury.

weekly compensation benefits for the last injury and shall have *the right of subrogation* against the first insurance carrier for the amount of the first carrier's financial responsibility for the employee's first injury," (emphasis supplied) was intended by the Legislature to deny the WCC in the case of successive industrial injuries the power to apportion the individual responsibility for payment of compensation between the several employers and insurance carriers involved. This Court, as stated in *Kidder*, supra, at page 734, viewed this power as "consistent with the general purpose of our compensation Act," and undoubtedly necessary and appropriate for the full exercise of the authority directly conferred upon the Commission in the administration of the compensation statute. See *Churchill v. S.A.D. No. 49 Teachers Association*, Me., 380 A.2d 186, 192 (1977); *State v. Fin & Feather Club*, Me., 316 A.2d 351, 355 (1974). In other words, was it the intention of the Legislature in enacting section 104–B to deprive the Commission of a portion of its powers of administration of the Act and to *compel* bifurcation of the issues in the case of successive injuries between the Commission and a court of common law jurisdiction, when the several employers and insurance carriers are parties before the Commission and their respective responsibilities to the single employee can be finalized without delay? We think not.

Section 104–B, upon enactment, became an integral part of the Workers' Compensation Act. Standing side by side with section 92 of the Act, section 104–B must be given a liberal construction as mandated by the reference section with a view to carrying out its general purpose. We must have in mind that the Commission under section 92 may prescribe forms and make suitable orders as to procedure adapted to secure a speedy, efficient and inexpensive disposition of all proceedings. An interpretation such as suggested by Bates would reach a completely opposite result.

Section 104–B itself gives no indication that it was intended to restrict the powers of the Commission in relation to its normal subject-matter jurisdiction to adjudicate the respective rights and duties of employees, employers and insurance carriers inter se in the industrial accident compensation area, nor in connection with its supervisory powers in the enforcement of the Act.

Furthermore, where the Legislature did not wish to invest the Commission with adjudicatory power in fringe areas such as in the recovery of damages from third party tortfeasors, it used clear language to manifest its intention. See 39 M.R.S.A. § 68. There is no reason to believe that, if it intended to divest the Commission of its normal power to apportion responsibility between insurance carriers in successive injury cases, the Legislature would have chosen explicit language to do so.

The legislative history surrounding the 1977 amendment discloses no other purpose than that of avoiding delay in payment of compensation claims as the title of the legislative document indicates. We take notice that simultaneous disposition of the individual responsibility of successive insurance carriers by the Commission, where feasible, would promote the speedy, efficient and inexpensive disposition of all claims in accordance with the legislative guidelines provided in section 92. Such would not cause delay, since payment of compensation following any order or decision of the Commission remains in effect and is not suspended in the event of appeal.

Viewing the 1977 amendment as remedial legislation, we believe that it was imported into the Workers' Compensation Act to permit recovery of full benefits by the employee against the second insurer in a case where the first insurer, for whatever reason, is not made a party to the proceedings before the Commission, reserving to the second insurer its right of subrogation.

Subrogation is an equitable right to be applied where one is compelled to discharge an obligation in whole or in part when another in good conscience ought to do so. We should not infer from the mere reference to the right of subrogation, in the

absence of clear legislative expression, any intent to deprive the Commission of a portion of its conventional powers to apportion the respective risk responsibility between several insurers in successive injury cases, when all the proper parties are before the Commission. A contrary construction would frustrate a major purpose built into the Act looking toward simplification of procedures in administration. 39 M.R.S.A. § 92. See also *Foster v. Congress Square Hotel Co.*, 128 Me. 50, 145 A. 400, 67 A.L.R. 239 (1929).

Furthermore, the equitable doctrine of subrogation should be allowed to operate only to the extent that it secures essential justice and should not be used when its application will injure the rights of others. *Williams v. Libby*, 118 Me. 80, 105 A. 855 (1919). Should the rights of Travelers against Bates have to be litigated at another time in another forum as held by the Commission in this case, then the effect of such circuitous travel would be not only to deny Travelers an immediate resolution of the extent of its responsibility towards employee Robbins, but might possibly jeopardize irreparably its rights against Bates on account of the Commission's exoneration of Bates in respect to Robbins' petition for further compensation. For the above reasons, we hold section 104–B inapplicable in this case.[2]

Because of ambiguity in the Commissioner's decisions in these companion cases and the application of erroneous principles of law to the facts, we must remand both for further hearing, findings of fact and conclusions of law.

The Commissioner's decree of March 15, 1978 in the case of Robbins against Bates and Travelers indicates without any doubt the interrelationship of the two cases in the ultimate conclusion reached by the Commissioner. It reads as follows:

2. Whether the first insurance carrier could be brought in before the Commission by the second insurer as a third party respondent in analogy to our third party practice under the rules of civil procedure or whether the right of subrogation, when applicable, must be litigated

"The Commission finds that the employer and carrier, at the risk of the last injury, is responsible for 100% of the resulting disability and now dismisses a petition for Further Compensation with reference to a 1977 injury based upon an agreement in which the accident or injury was described as follows:

'Stopped cheese with right hand. Contusion right palm.'

"Despite some confusion in the testimony of Dr. Victor Parisien, in effect, the doctor did determine that the injury, other than those described in the Agreement and the subject for Petition for Further Compensation, made a substantial contribution to the disability of the employee which was the subject of the Petition for Award of Compensation, which this Commission decided December 20, 1978.

"This is a situation which is covered by Section 104–B—*Liability when two carriers dispute over financial responsibility* —(emphasis in original) and it is believed to be the highest degree of administrative efficiency for this Commission in the disposition of its business, to hold that the carrier on this injury at the time of the last injury should be responsible to the employee and have the right of subrogation against the first insurance carrier for the amount of the first carrier's financial responsibility for the employee's first injury. In this case the employer was self-insured at the time and that does not seem to be a reasonable basis to the Commission for following any other course of action.

"Assuming that the Commission is correct in its decision that the employee has the incapacity which forms the basis of its decree of December 20, 1978, the important thing is to see to it that benefits are paid as promptly as they may be under all the existing circumstances.

exclusively in an action at law, are problems upon which we intimate no opinion. But see *Newell v. North Anson Reel Co.*, 161 Me. 461, 214 A.2d 97 (1965); *Morin's Case*, 122 Me. 338, 120 A. 44 (1923).

"As the two parties have their mutual bond of interest in the handling of such matters before this Commission and in the field of industrial injury, it would not seem to be an insuperable barrier for them to resolve their difficulties without the necessity of future litigation before this Commission in any event."

We are aware that, in the absence of fraud, the factual findings of the Commission if supported by credible evidence are final and may not be disturbed on appeal. 39 M.R.S.A. § 99. But the application of erroneous principles of law to the facts found is reversible error. *Moreau v. Zayre Corp.*, Me., 408 A.2d 1289, 1292 (1979); *Gilbert v. Maheux*, Me., 391 A.2d 1203, 1205–06 (1978).

Notwithstanding the Commissioner's initial decision in Robbins against Bates for further compensation to the effect that

"[t]he Petition is dismissed as there is *no evidence before this Commission which would causally relate the injury complained of by the employee, and the evidence given, and her supporting evidence to the effect there was any causal relationship between her alleged incapacity to work and the injury set forth in this petition*" (emphasis provided),

it is obvious from the recited decree of March 15, 1979 the Commissioner was laboring under a mistake of law to the effect that the description of the injury in the approved agreement for compensation—contusion right palm—barred recovery of further compensation following a second injury described as "injuries to my right hand, arm, and neck," even if in combination both injuries contributed to the ultimate disability of the employee.

An approved agreement for compensation has the force of a final adjudication only to the extent of the facts agreed upon under the conditions considered by the parties as the basis for the compensation to be paid. *Dufault v. Midland-Ross of Canada, Ltd.*, Me., 380 A.2d 200, 205 (1977); *Crowley's Case*, 130 Me. 1, 153 A. 184 (1931); *Airedale Worsted Mills v. Cote*, 75 R.I. 361, 66 A.2d 802 (1949). Aggravation of an initial injury either because of a preexisting condition or a subsequent additional injury is compensable, notwithstanding an approved agreement respecting the original injury. *Crosby v. Grandview Nursing Home*, Me., 290 A.2d 375 (1972); *Healey's Case*, 124 Me. 54, 126 A. 21 (1924).

The Commissioner's reference in the recited decree of March 15, 1979, without any indication of disapproval, to Dr. Parisien's testimony to the effect that the last injury "made a substantial contribution to the disability of the employee" indirectly discloses a belief by the Commissioner that the first injury was contributing to some degree to the employee's present disability. This fact is further supported by the Commissioner's admonition to the parties that "it would not seem to be an insuperable barrier for them to resolve their difficulties without the necessity of future litigation before this Commission," a rationale explicable only on the theory that the original injury is a contributing factor in the employee's present condition.

The Commissioner's statement in the decree that "[i]n this case the employer was self-insured at the time [of the first injury] and that does not seem to be a reasonable basis to this Commission for following any other course of action," is another ambiguity which taints it with possible error of law, in that the Commissioner may have been applying an equitable formula not authorized by statute to extricate Bates from some liability in a case in which the only medical evidence presented does establish responsibility. The Act does not empower the Commissioner to act generally in eliminating what may have appeared to him to be injustice in the operation of the compensation law. See *Mullen v. Brown Homes, Inc.*, Me., 358 A.2d 557 (1976); *Page v. General Elec. Co.*, Me., 391 A.2d 303 (1978).

The entry will be:

Petitioner Robbins' appeal sustained. Travelers' appeal sustained. Judgment (pro forma) of the Superior Court in each case vacated. Both cases remanded to the Supe-

rior Court for remand to the Workers' Compensation Commission with directions to make further findings of fact, conclusions of law and new adjudications on the basis of the present record and such further evidence as the parties may present, consistent with this opinion.

Further ordered that the employer and insurance carrier pay to the employee an aggregate allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for these appeals.

McKUSICK, C. J., and POMEROY and ARCHIBALD, JJ., did not sit.